IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| EFRAND CANTORAL #1113625 | § | |
| v. | § | CIVIL ACTION NO. 6:05cv96 |
| DOUGLAS DRETKE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Efrand Cantoral, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the prison. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636©).

An evidentiary hearing was conducted on September 15, 2005, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Cantoral testified that his complaint revolved around three claims. These claims were two uses of force and one incident when he was placed in an unsanitary cell with bloodstains on the walls, and given no cleaning materials.

Cantoral testified that in September of 2004, several officers were harassing him by turning off the electricity and water in his cell. He put his arm out of the food slot in his door and refused to allow the officers to close the slot.[1] The officers turned the electricity and water back on but Cantoral refused to remove his arm, demanding to see a supervisor. The officers sprayed him twice with gas and once with a fire hose, and eventually were able to force him to remove his arm. Cantoral said that the incident was "undocumented"; there were no reports written on it and he was not taken for any medical care. In fact, the medical records contain no mention of this incident at

---

[1] This practice is known as "jacking" the food slot.

all; there are no sick call requests, and in an interview with a counselor on October 1, 2004, Cantoral complained that officers were "persecuting" him, writing him up for "bogus" cases and not feeding him, but there is no reference to any violent assaults. Cantoral filed a grievance about this incident, but the Office of the Inspector General declined to open an investigative report.

In December of 2004, Cantoral said, he was having problems with the inmate next door to him. He was moved to another cell around December 31, 2004, but this cell had bloodstains all over the walls. He refused to give up the handcuffs, but eventually did so; Officer Atchison closed the food slot and asked Cantoral "why did you jack it?" Cantoral replied that he had not done so, but he was given a disciplinary case and left in the bloodstained cell for 30 days without cleaning materials.

Cantoral's medical records contain no entries for the month of January, 2005. He testified that he did not file any grievances concerning his placement in a bloodstained cell.

The third incident occurred in June of 2005. Cantoral requested leave at the Spears hearing to amend his complaint to include this claim. He said that the officers were not feeding him so he "jacked the food slot." Cantoral acknowledged that "jacking the slot" is a violation of the rules but said that it is the only way to get a supervisor to come talk to him. He stated that Lt. Burnett threatened to break his arm, and then several officers used force on him. Cantoral said that he filed a Step One grievance on this incident but it was never returned, so he could not file a Step Two; he explained that he submitted this grievance directly to the warden's office rather than sending it through the unit grievance coordinator.

Legal Standards and Analysis

Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit.

In other words, the exhaustion process must be completed before the federal lawsuit is filed; even complete exhaustion following the filing of the lawsuit is not sufficient. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). In that case, the Fifth Circuit stated as follows:

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding IFP.

Underwood, 151 F.3d at 296.

The Sixth, Eighth and Tenth Circuits have held that when a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint *in toto* is appropriate. Linder v. Sundquist, 46 Fed.Appx. 343 (6th Cir. 2002), *citing* White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997); Graves v. Norris, 218 F.3d 884, 886 (8th Cir. 2000); Ross v. City of Bernalillo, 365 F.3d 1181, 1188-89 (10th Cir. 2004).[2]

The plain language of the statute confirms this reading; as noted above, 42 U.S.C. §1997e(a) says that "No action shall be brought with respect to prison conditions under Section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until *such administrative remedies are available* have been exhausted." (emphasis added) The Fifth Circuit has

---

[2]The Second Circuit has held that a "total exhaustion" rule is not required. Ortiz v. McBride, 380 F.3d 649 (2nd Cir. 2004). However, that case focuses on policy considerations and distinguishing prison administrative-remedy exhaustion from exhaustion in the habeas context, and does not address either the plain language of the statute or the intent of Congress concerning the total exhaustion rule.

taken a strict approach to the exhaustion requirement. *See* Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).[3]

In this case, Cantoral has not exhausted such administrative remedies as are available to him, because he raises claims which he concedes that he did not exhaust. As noted above, Cantoral acknowledges that he did not file any grievances on his claim regarding placement in a bloodstained cell, and he sent his grievance on the June 2005 incident directly to the warden's office rather than following proper procedures for grievances, with the result that it was never processed.

The statute clearly provides that "*no action shall be brought*" until such administrative remedies as are available are exhausted. *See generally* Porter v. Nussle, 534 U.S. 516, 524, 123 S.Ct. 983, 988 (2002) (noting that all available remedies must be exhausted); Wright v. Hollingsworth, 260 F.3d at 358 (inmate required to exhaust available remedies, "whatever they may be").

For this reason, this Court agrees with the Sixth, Eighth, and Tenth Circuits that under the plain language of the statute, dismissal of the lawsuit *in toto* for failure to exhaust is appropriate. Significantly, the statute does not say that no *claim* which has not been exhausted may be brought, but that no *action* shall be brought until such administrative remedies as are available have been exhausted. The term "action" is all-encompassing, incorporating the whole cause, not merely the "complaint." *See* Whitaker v. City of Houston, 963 F.2d 831, 934 (5th Cir. 1992) (drawing a distinction between dismissal of the action and dismissal of the complaint); *cf.* Rule 2, Fed. R. Civ. P. Thus, the statutory language that "no action shall be brought ... until such administrative remedies as are available have been exhausted" plainly means that the lawsuit itself cannot be filed until all available administrative remedies have been exhausted.

In saying that "no action shall be brought" prior to exhaustion of administrative remedies, Congress necessarily intended that all available administrative remedies must be exhausted before

---

[3]In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit expressly declined to consider the propriety of a complete exhaustion rule, observing that the defendants in that case had not argued in favor of such a rule. Johnson, 385 F.3d at 523 n.15.

the lawsuit can be filed at all. *See* statement of Sen. Abraham, April 19, 1996, explaining that under the law, state prisoners would have to exhaust "all administrative remedies" before filing suit in federal court (142 Cong. Rec. S3703-01, April 19, 1996); Joint Explanatory Statement by the House-Senate Committee of Conference, 141 Cong. Rec. H13874-01, at H13928 (December 4, 1995) (explaining that 42 U.S.C. §1997a is being amended "to require that administrative remedies be exhausted prior to any prison conditions action being brought under any federal law by an inmate in federal court."). The Report of the Activities of the House Committee on the Judiciary, HR. Report 104-879 (January 2, 1997), p. 183, notes that this provision of the law "requires prisoners to exhaust the administrative remedies established by the corrections system before they may file a lawsuit in federal court." *See also* Underwood v. Wilson, 151 F.3d at 295 (noting Congressional intent of statute).

Hence, the clear purpose of this law was to require that state prisoners proceed through all available administrative channels of relief before they could bring their lawsuit in federal court. The logical meaning of this requirement is that all administrative channels of relief must be pursued, on all claims which the prisoner wishes to raise, before he may file his lawsuit in federal court. It should be noted that the very term "exhaustion," in the prisoner civil rights context, is defined by the Fifth Circuit as "to take *complete* advantage of." Underwood, 151 F.3rd at 295 (emphasis added).

A similar rule exists in the context of habeas corpus. The Fifth Circuit has specifically held that a habeas corpus petition must be dismissed if any issue has not been exhausted in the state courts. Thomas v. Collins, 919 F.2d 333 (5th Cir. 1990), *reh. den.* The reason for this rule is to allow the state courts the opportunity to rule upon an issue before it is adjudicated by the federal courts. *See generally* Rose v. Lundy, 455 U.S. 509 (1982). Although the question of state court rulings does not present itself in this issue, the underlying reasoning remains the same; where problems exist within the state prison, the state authorities should be given the first opportunity to review these problems and take appropriate action where necessary. This is the basis for the administrative exhaustion requirement, and it therefore follows that all issues to be raised in federal

court should first be presented to the state administrative authorities for consideration and possible resolution. Underwood, 151 F.2d at 296 (noting that federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievances procedures is relief to which the prisoner is not entitled).

The present case is an action brought with respect to prison conditions under Section 1983, by a prisoner confined in a correctional facility. The prison records show that this action was brought at a time when such administrative remedies as were available to Cantoral for claims that he raised as part of his action were not exhausted. Consequently, he is in violation of the statute, which explicitly provides that no action shall be brought until all administrative remedies as are available have been exhausted. Porter v. Nussle, 534 U.S. at 524, 123 S.Ct. at 988; Wright v. Hollingsworth, 260 F.3d at 358. Because Cantoral filed a lawsuit seeking federal court intervention where the state prison officials had not had the opportunity to address all of his claims, his lawsuit may be dismissed. Underwood, 151 F.3d at 296.

The Fifth Circuit has held that dismissal with prejudice is appropriate where a lawsuit is filed prior to the exhaustion of administrative remedies. Underwood, 151 F.3d at 296. This Court has concluded that under the complete exhaustion rule, such dismissal with prejudice is appropriate only where *none* of the available administrative remedies have been exhausted. In a case such as the present one, where some but not all administrative remedies have been exhausted, the proper course is a dismissal of the lawsuit without prejudice. This preserves the Congressional intent of the statute, which is to require that all available administrative remedies be exhausted before the action is filed, while allowing the plaintiff either to refile his lawsuit raising only the exhausted claims, or to return to the prison administrative procedures and exhaust the remainder of his claims, refiling his lawsuit after all available administrative remedies have been exhausted.[4] Because Cantoral has exhausted

---

[4] As noted above, even complete exhaustion after the lawsuit is filed is not sufficient to satisfy the statutory requirements. Underwood v. Wilson, 151 F.3d at 296.

some but not all of his available administrative remedies, the proper course in this case is to dismiss the lawsuit without prejudice, and it is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED without prejudice for failure to exhaust administrative remedies. 42 U.S.C. §1997e(a). It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **19** day of **September, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE